**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | | |
|---|---|---|
| RUTH ANN COOPER, D.P.M, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: |
| v. | ) ) | **CLASS ACTION** |
| MEDIMETRIKS PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, RUTH ANN COOPER, D.P.M. ("Plaintiff"), brings this action on behalf of herself and all others similarly situated, through her attorneys, and except as to those allegations pertaining to Plaintiff or her attorneys, which allegations are based upon personal knowledge, allege the following upon information and belief against Defendant, MEDIMETRIKS PHARMACEUTICALS, INC. ("Defendant"):

**PRELIMINARY STATEMENT**

1.      This case challenges Defendant's practice of sending unsolicited facsimiles.

2.      The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation. Defendant has sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of an unsolicited advertisement on or about February 15, 2018 ("the Fax"), a true and correct copy of which is

attached hereto as Exhibit A, and made a part hereof. The Fax describes the commercial availability or quality of Defendant's products, goods and services. Plaintiff are informed and believe, and upon such information and belief avers, that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the JFPA, including but not limited to those advertisements sent to Plaintiff.

3.      Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.      On behalf of herself and all others similarly situated, Plaintiff bring this case as a class action asserting claims against Defendant under the JFPA. Plaintiff seek to certify a class including faxes sent to Plaintiff and other advertisements sent without proper opt-out language or without prior express invitation or permission, whether sent to Plaintiff or not.

5.      Plaintiff is informed and believe, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of

statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

6.      This action further seeks relief expressly authorized by the New Jersey Junk Fax Statute.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.      This court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, has made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

## PARTIES

9.      Plaintiff, RUTH ANN COOPER, D.P.M., in Ohio resident.

10.     On information and belief, Defendant, MEDIMETRIKS PHARMACEUTICALS, INC., is a Delaware corporation with its principal place of business in Fairfield, New Jersey.

## FACTS

11.     On information and belief, on or about February 15, 2018, Defendant sent an unsolicited facsimile to Plaintiff using a telephone facsimile machine, computer, or other device. A copy of the facsimile is attached hereto as Exhibit A.

12.     Exhibit A is a "SAMPLE REQUEST FORM" offering Plaintiff free samples of "Loprox®," an "Rx only" cream sold by "Medimetriks Pharmaceuticals, Inc."

13.     Defendant Medimetriks Pharmaceuticals, Inc. is a for-profit business that holds itself out as "a leading independent specialty pharmaceutical company dedicated to the

Dermatology and Podiatry markets." http://www.medimetriks.com/dermatology-and-podiatry-excellence.

14.    On information and belief, Defendant receives some or all of the revenues from the sale of the products, goods and services advertised on Exhibit A, and the Defendant profits and benefits from the sale of the products, goods and services advertised on Exhibit A.

15.    Plaintiff did not give Defendant "prior express invitation or permission" to send the fax.

16.    On information and belief, Defendant faxed the same and other unsolicited facsimiles without the required opt-out language to Plaintiff and more than 25 other recipients or sent the same and other advertisements by fax with the required opt-out language but without first receiving the recipients' express invitation or permission.

17.    There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

18.    Defendant's facsimile attached as Exhibit A did not display a proper opt-out notice as required by 47 C.F.R. § 64.1200.

## COUNT I

### JUNK FAX PREVENTION ACT OF 2005, 47 USC § 227

19.    Plaintiff, on behalf of herself and all others similarly situated, incorporates Paragraphs 1 through 16 as though fully set forth herein, as and for its paragraph 17.

20.    In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff bring this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material

advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship, and/or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Excluded from the Class are the Defendant, its employees, agents and members of the Judiciary. Plaintiff seek to certify a class which include but are not limited to the fax advertisements sent to Plaintiff. Plaintiff reserve the right to amend the class definition upon completion of class certification discovery.

21.     Class Size (F. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff are informed and believe, and upon such information and belief avers, that the number of class members is at least forty.

22.     Commonality (F. R. Civ. P. 23 (a) (2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

a)      Whether the Defendant sent unsolicited fax advertisements;

b)      Whether Defendant's faxes sent to other persons, not the Plaintiff, constitute advertisements;

c)      Whether the Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

d)      Whether Defendants' faxes promote goods or services "at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars," making them advertisements, *In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, ¶ 52 (FCC 2006);

e)      The manner and method the Defendant used to compile or obtain the list of fax numbers to which they sent Exhibit A, other unsolicited faxed advertisements or other advertisements without the required opt-out language;

f)      Whether the Defendant faxed advertisements without first obtaining the recipient's prior invitation or permission;

g)      Whether the Defendant sent the faxed advertisements knowingly;

h)      Whether the Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

i)      Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

j)      Whether the Defendant should be enjoined from faxing advertisements in the future;

k)      Whether the Plaintiff and the other members of the class are entitled to statutory damages; and

l)      Whether the Court should award treble damages.

23.      Typicality (F. R. Civ. P. 23 (a) (3)):   The Plaintiff's claims are typical of the claims of all class members. The Plaintiff received the same or similar faxes as the faxes sent by or on behalf of the Defendant advertising products, goods and services of the Defendant during the Class Period. The Plaintiff are making the same claims and seeking the same relief for herself and all class members based upon the same federal statute. The Defendant has acted in the same

or in a similar manner with respect to the Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

24.    Fair and Adequate Representation (F. R. Civ. P. 23 (a) (4)):  The Plaintiff will fairly and adequately represent and protect the interests of the class. She is interested in this matter, has no conflicts and has retained experienced class counsel to represent the class.

25.    Predominance and Superiority (F. R. Civ. P. 23 (b) (3)):  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a)    Proof of the claims of the Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

b)    Evidence regarding defenses or any exceptions to liability that the Defendant may assert and attempt to prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings;

c)    The Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d)    The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and

e)    This case is inherently manageable as a class action in that:

(i)    The Defendant identified persons to receive the fax transmissions and it is

believed that the Defendant's and/or Defendant's agents' computers and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for the Plaintiff and the class with the same common proofs;

(iii)     Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning the Defendant's practices; and

(vi)     As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227 *et seq.***

26.     The JFPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

27.     The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

28.     **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders

of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

1.    a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

2.    a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

3.    a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

4.    the opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out

Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

29.    **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A.    The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B.    The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

C.    The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

D.    The failure of a sender to comply with the Opt-Out Notice Requirements

precludes the sender from claiming that a recipient gave "prior express invitation or permission" to receive the sender's fax (*See* Report and Order ¶ 48);

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express invitation or permission" to receive the fax nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the Act.

30.     The 2006 Report and Order states that "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." (Report and Order ¶ 52).

31.     **The Fax**. Defendant sent the on or about February 15, 2018, advertisement via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Fax constituted an advertisement under the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and/or Defendant is precluded from asserting any prior express invitation or permission or that Defendant had an established business relationship with Plaintiff and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the JFPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class.  Plaintiff seeks to certify a class which includes these faxes and all others sent during the four years prior to the filing of this case through the present.

32.     **Defendant's Other Violations.** Plaintiff are informed and believe, and upon such

11

information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that Defendant is precluded from asserting any prior express invitation or permission or that Defendant had an established business relationship because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff are informed and believe, and upon such information and belief avers, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

33. The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

34. The JFPA is a strict liability statute, so the Defendant is liable to the Plaintiff and the other class members even if its actions were only negligent.

35. The Defendant knew or should have known that (a) the Plaintiff and the other class members had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's products, goods or services; (b) the Plaintiff and the other class members did not have an established business relationship; (c) Defendant transmitted

advertisements;  (d) the Faxes did not contain the required Opt-Out Notice; and (e) Defendant's transmission of advertisements that did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

36.     The Defendant's actions caused damages to the Plaintiff and the other class members. Receiving the Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's and the other class members' telephone lines and fax machine. The Defendant's faxes cost the Plaintiff and the other class members time, as the Plaintiff and the other class members and their employees wasted their time receiving, reviewing and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's and the other class members' business activities. The Defendant's faxes unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff, RUTH A. COOPER, D.P.M., individually and on behalf of all others similarly situated, demands judgment in her favor and against Defendant, MEDIMETRIKS PHARMACEUTICALS, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiff as the representatives of the class, and appoint the Plaintiff's counsel as counsel for the class;

B.     That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

C.     That Court enjoin the Defendant from additional violations; and

D.     That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

## COUNT II

### VIOLATION OF THE NEW JERSEY JUNK
### FAX STATUTE N.J.S.A 56: 8-157 et seq.

37.     Plaintiff, on behalf of herself and all others similarly situated, incorporate

Paragraphs 1 through 36 as though fully set forth herein, as and for its paragraph 37.

38.     In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count II for violation of the

New Jersey Junk Fax Statute (56:8-157, *et seq.*), which is part of the New Jersey Consumer

Fraud Act (56:8-1 *et seq.*), on behalf of the following Class of persons:

> All New Jersey residents who (1) on or after four years prior to the
> filing of this action, (2) were sent telephone facsimile messages of
> material advertising the commercial availability or quality of any
> property, goods, or services by or on behalf of Defendants, , (3)
> from whom Defendants did not obtain "prior express invitation or
> permission" to send fax advertisements, or (4) with whom
> Defendants did not have an established business relationship,
> and/or (5) where the fax advertisements did not include an opt-out
> notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

39.     A class action is warranted because:

(a)     On information and belief, the Class includes forty or more persons and is

so numerous that joinder of all members is impracticable.

(b)     There are questions of fact or law common to the Class predominating

over questions affecting only individual Class members, including, without limitation:

(i)     Whether Defendant sent unsolicited fax advertisements;

(ii)     Whether Defendant's faxes sent to other persons, not the Plaintiff,

constitute advertisements;

(iii)     Whether Defendant's facsimiles advertised the commercial

availability or quality of property, goods, or services;

14

(iv)     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A, and other unsolicited faxed advertisements or other advertisements without the required opt-out language;

(v)      Whether Defendant faxed advertisements without first obtaining the recipients' express invitation or permission;

(vi)     Whether Defendant violated the provisions of N.J.S.A. 56:8-1 *et seq.* and 56:8-157 *et seq.*;

(vii)    Whether Plaintiff and the other Class members are entitled to statutory damages;

(viii)   Whether Defendant should be enjoined from faxing advertisements in the future;

(ix)     Whether the Court should award double statutory damages for willful acts;

(x)      Whether the Court should award treble damages and attorneys' fees under N.J.S.A. 56:8-1 *et seq.*; and

(xi)     Whether Exhibit A and the other advertisements displayed the clear and conspicuous notice required by N.J.S.A. 56-158(b).

40.     Plaintiff will fairly and adequately protect the interests of the other Class members.  Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent Class members.

41.     A class action is an appropriate method for adjudicating this controversy fairly and effectively. The interest of each individual Class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

42.     The New Jersey Consumer Fraud Act and the New Jersey Junk Fax Statute prohibit a person from using any telephone facsimile machine, computer or other device from sending an unsolicited advertisement to a telephone facsimile machine within this state.

43.     The New Jersey Consumer Fraud Act which incorporates the New Jersey Junk Fax Statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission."

44.     The court shall award actual damages sustained or $500 for each violation, whichever is greater, along with costs of the suit, reasonable attorneys' fees and to enjoin future violations. If the court finds that Defendant were requested to cease and desist, the court shall award $1000 for each subsequent transmission along with costs of suit and reasonable attorneys' fees. N.J.S.A. 56:8-159.

45.     Defendant violated N.J.S.A. 56:8-157 *et seq.* and 56:8-1 *et seq.* by sending unsolicited advertisements (such as Exhibit A) to Plaintiff and other members of the Class without first obtaining their prior express invitation or permission and by not displaying clear and conspicuous notices on the first page of the unsolicited advertisements as required by N.J.S.A. 56:8-158.

46.     The New Jersey Junk Fax Statute is a strict liability statute and Defendant is liable to Plaintiff and the other Class members even if its actions were only negligent.

47.     Defendant knew or should have known that Plaintiff and the other Class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's good or services, that Defendant did not have an established business relationship with Plaintiff and the other Class members, that Exhibit A and the other advertisements Defendant sent were advertisements, and that Exhibit A and the other advertisements Defendant sent did not display the proper opt-out notice as required by N.J.S.A. 56:8-158.

48.     Defendant's actions caused damages to Plaintiff and the other Class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes.   Moreover, Defendant's faxes used Plaintiff's fax machine. Defendant's faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendant's unauthorized faxes.   That time otherwise would have been spent on Plaintiff's business activities.   Defendant's unauthorized faxes interrupted Plaintiff's and the other Class members' privacy interests in being left alone

49.     Even if Defendant did not intend to cause damage to Plaintiff and the other Class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendant's advertisements, those facts are irrelevant because the New Jersey Junk Fax Statute is a strict liability statute.

WHEREFORE, Plaintiff, RUTH ANN COOPER, D.P.M. individually and on behalf of all others similarly situated, demands judgment in her favor and against Defendant, MEDIMETRIKS PHARMACEUTICALS, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a Class action, appoint Plaintiff as the representatives of the Class, and appoint Plaintiff's counsel as counsel for the Class;

B.     That the Court award $500.00 in damages for each violation of the New Jersey Consumer Fraud Act (56:8-1 *et seq.*) and the New Jersey Junk Fax Statute (56:8-157 *et seq.*), and $1,000 to each Class member that requested Defendant to remove its fax number; and

C.     That the Court award attorneys' fees, costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

## COUNT III

### VIOLATION OF THE NEW JERSEY
### CONSUMER FRAUD ACT 56: 8-1 et seq.

50.     Plaintiff, on behalf of herself and all others similarly situated, incorporate Paragraphs 1 through 49 as though fully set forth herein, as and for its paragraph 50.

51.     In accordance with Fed. R. Civ. P. 23, Plaintiff brings Count III for violation of the New Jersey Consumer Fraud Act (56:8-1 *et seq.*), on behalf of the following Class of persons:

> All New Jersey residents who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, , (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship, and/or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

52.     Defendant's faxes are an "advertisement" as defined by N.J.S.A. 56:8-1(a).

53.     Plaintiff, and all those similarly situated are "persons" as defined by N.J.S.A. 56:8-1(d).

54.     Defendant's violation of the New Jersey Junk Fax Statute constitute a *per se* violation of the New Jersey CFA, as the New Jersey Junk Fax Statute was promulgated pursuant to the CFA.

55.     Defendant's practice of transmitting unauthorized advertisements that includes and/or excludes prohibited terms and/or information including, but not limited to *per se* violations of the CFA, constitutes an unlawful act and an unconscionable commercial practice under the CFA.

56.     As a direct result of the above-referenced statutory violations, Plaintiff and all those similarly situated have suffered ascertainable losses and are entitled to statutory compensation as required under N.J.S.A. 56:8-157, *et seq*.

WHEREFORE, Plaintiff, RUTH ANN COOPER, D.P.M., individually and on behalf of all others similarly situated, demand judgment in her favor and against Defendant, MEDIMETRIKS PHARMACEUTICALS, INC., as follows:

A.     For injunctive relief prohibiting Defendant from future violations of the New Jersey Junk Fax Statute, 56:8-157, *et seq.;*

B.     For a declaratory judgment that the Defendant violated N.J.S.A. 56:8-157 *et seq.;*

C.     That the Court adjudge and decree that the present case may be properly maintained as a Class action, appoint Plaintiff as the representatives of the Class, and appoint Plaintiff's counsel as counsel for the Class;

D.      For maximum statutory damages for each separate violation of the New Jersey Consumer Fraud Act (56:8-1 *et seq.*) and the New Jersey Junk Fax Statute (56:8-157 *et seq.*) and all other applicable statutes;

E.      That the Court award $500.00 in damages for each violation of the New Jersey Consumer Fraud Act (56:8-1 *et seq.*) and the New Jersey Junk Fax Statute (56:8-157 *et seq.*);

F.      For treble damages, reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. 56:8-19;

G.      For pre-judgment and post-judgment interest; and

H.      For other and further relief as Plaintiff and all others similarly situated may be entitled or as the Court deems equitable and just but in any event, not more than $75,000.00 per individual violation, inclusive of all damages and fees.

Respectfully submitted,

RUTH ANN COOPER, D.P.M.  individually and as the representatives of a class of similarly-situated persons

By: s/ Matthew N. Fiorovanti
Matthew N. Fiorovanti
Michael J. Canning
GIORDANO, HALLERAN & CIESLA
125 Half Mile Road, Suite 300
Red Bank, New Jersey  07701-6777
Telephone:  732-741-3900
Fax:  732-224-6599
Email:  mcanning@ghclaw.com
mfiorovanti@ghclaw.com

AND:

Ryan M. Kelly *(pro hac vice to be submitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
Email:  rkelly@andersonwanca.com

Matthew Stubbs *(pro hac vice to be submitted)*
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, OH  45202
Telephone: 513-241-4722
Fax:  513-241-8775
Email: mstubbs @mrjlaw.com